THE STATE OF OHIO, APPELLEE, *v.*
OHAYON, DEFENDANT; ALLEGHENY
MUTUAL CAS. CO., APPELLANT.

(No. 46798—Decided December 5, 1983.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Benedict J. Zaccaro,* for appellant.

NAHRA, J. This is an appeal from the court of common pleas in which the appellant, Allegheny Mutual Casualty Company, contests the trial court's order overruling in part appellant's "Motion to Discharge Surety In Part From Bond Forfeiture," resulting in a final judgment for the appellee, state of Ohio, in the amount of $46,650. The following facts gave rise to this appeal.

Defendant Haviv Ohayon was indicted for arson. Appellant posted a $50,000 surety bond to effect defendant's pretrial release. As a further condition of release, the trial court required defendant to surrender his United States and Israeli passports. Upon compliance, the court permitted defendant to travel between New York and Ohio to continue his business.

When the defendant failed to appear in court, the trial court declared a bond forfeiture, issued a capias for the defendant, and notified appellant. Upon due diligence, appellant learned that defendant had obtained an illegal passport and had fled to Israel. Appellant sent agents to Israel who located and interviewed defendant. The substance of the video-taped interview was that defendant would not voluntarily return to the United States. Appellant learned through diplomatic channels that Israel was unwilling to honor any extradition proceeding and that the United States was unwilling to press Israel to abide by its extradition treaty with the United States.

Appellant filed a "Motion to Discharge Surety In Part From Bond Forfeiture," alleging that it was impossible to extradite defendant and setting forth its expenses incurred in locating defendant. Appellant requested the release in part from the $50,000 bond forfeiture stating that when foreign policy changed, appellant would pay the cost of returning defendant to the United States. The trial court overruled appellant's motion but for a credit of $3,350 for appellant's expenses in locating defendant and entered judgment for appellee in the amount of $46,650. Appellant timely appealed.

Appellant's sole assignment of error is that:

"The trial court erred in denying appellant's 'Motion to Discharge Surety In Part From Bond Forfeiture' since appellant established good cause for relief pursuant to Ohio Revised Code Section 2937.36(C). The decision constitutes an abuse of discretion and would result in manifest injustice."

The issues[1] raised hereunder are

---

[1] "1. Shouldn't the fact that the accused had obtained a false passport and fled to a country which refuses to honor its extradition treaty with the United States constitute a good and sufficient reason for the Surety's failure to procure that person's appearance before the trial court?

"2. Is it substandard conduct for a surety

related in law and fact and will be discussed together.

Crim. R. 46(A) provides that "[t]he purpose of bail is to insure that the defendant appears at all stages of the criminal proceedings." See, also, R.C. 2937.22; *Bland* v. *Holden* (1970), 21 Ohio St. 2d 238 [50 O.O.2d 477]; *Hampton* v. *State* (1884), 42 Ohio St. 401. Therefore, the primary obligation of a surety upon a bail bond is to have the defendant present in court at the calling of the court. *State, ex rel. Howell,* v. *Schiele* (1949), 85 Ohio App. 356 [40 O.O. 234], paragraph one of the syllabus. The United States Supreme Court has stated that:

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; * * * In 6 Modern it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' * * * They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee." *Taylor* v. *Taintor* (1872), 83 U.S. (16 Wall.) 366, 371-372.

A surety guarantees that he will produce the defendant at the designated time by the posting of a surety bond. If the defendant fails to appear in court at the designated time, "any bail given for his release shall be forfeit," Crim. R. 46(K), unless the surety is exonerated "as provided by law." Crim. R. 46(N). R.C. 2937.36, which governs forfeiture proceedings, provides, in relevant part, that:

"Upon declaration of forfeiture, the magistrate or clerk of the court adjudging forfeiture shall proceed as follows:

"* * *

"(C) As to recognizances he shall notify [the] accused and each surety by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case, of the default of the accused and the adjudication of forfeiture and require each of them to show cause on or before a date certain to be stated in the notice, and which shall be not less than twenty nor more than thirty days from [the] date of mailing notice, why judgment should not be entered against each of them for the penalty stated in the recognizance. If good cause by production of the body of the accused or otherwise is not shown, the court or magistrate shall thereupon enter judgment against the sureties or either of them, so notified, in such amount, not exceeding the penalty of the bond, as has been set in the adjudication of forfeiture, and shall award execution therefor as in civil cases. * * *"

Thus, a surety may be exonerated if good cause by producing the defendant or otherwise is shown.

Appellant argues that it has demonstrated good cause, not by producing the defendant, but "otherwise" in that it is

---

to allow a defendant to commute between Cleveland and New York for the ostensible purpose of continuing his business enterprise when the trial court did not place restrictions on the defendant's travel pursuant to Ohio Criminal Rule 46(C) but instead conditioned his release upon his surrender of his U.S. and Isreali [*sic*] passports?

"3. Is the 'good cause' necessary to relieve the surety pursuant to Ohio Revised Code Section 2937.36(C) limited to a showing of good cause for the initial non-appearance of the defendant at the originally scheduled court date or does it also include reasons for the defendant's non-appearance thereafter, including the defendant's non-availability through no fault of the surety?

"4. Under the circumstances of this case, and in light of the modern technology and the ease of travelling great distances within a very short period of time, can it be said that the surety failed to live up to the standards of *Tailor* [*sic*] v. *Taintor,* 16 Wall. 366, an 1873 decision?"

now impossible for appellant to produce the defendant because of foreign policy. Appellant further argues that its defense of impossibility is applicable to securing the defendant subsequent to the defendant's initial nonappearance. We disagree with appellant's first contention that it has shown good cause or otherwise for exoneration.

A surety's defense is applicable to exonerate a surety for a defendant's initial nonappearance and any nonappearance thereafter if the surety's reason for the defendant's nonappearance constitutes a valid defense. The Supreme Court of Ohio, adopting the language of the appellate decision under its consideration, stated that "* * * a ground for vacation is alone insufficient. There also must be set forth a sufficient defense to the [forfeiture] judgment." *State* v. *Ward* (1978), 53 Ohio St. 2d 40, 42 [7 O.O.3d 124]. Therefore, if appellant has a valid defense, appellant will not be liable for the defendant's initial nonappearance and any nonappearance thereafter.

The statutory defenses available to a surety are set forth in R.C. 2937.40, which provides, in pertinent part, that:

"(A) Bail of any type that is deposited under sections 2937.22 to 2937.45 of the Revised Code or Criminal Rule 46 by a person other than the accused shall be discharged and released, and sureties on recognizances shall be released, in any of the following ways:

"(1) When a surety on a recognizance or the depositor of cash or securities as bail for an accused desires to surrender the accused before the appearance date, the surety is discharged from further responsibility or the deposit is redeemed in either of the following ways:

"(a) By delivery of the accused into open court;

"(b) When, on the written request of the surety or depositor, the clerk of the court to which recognizance is returnable or in which deposit is made issues to the sheriff a warrant for the arrest of the ac-

cused and the sheriff indicates on the return that he holds the accused in his jail.

"(2) By appearance of the accused in accordance with the terms of the recognizance or deposit and the entry of judgment by the court or magistrate;

"(3) By payment into court, after default, of the sum fixed in the recognizance or the sum fixed in the order of forfeiture, if it is less."

Since none of the statutory defenses is applicable in this case, we turn to common-law case history.

Three well-established, nonstatutory defenses which are available to a surety when a defendant fails to appear are set forth in the leading case of *Taylor* v. *Taintor* (1872), 83 U.S. (16 Wall.) 366. In *Taylor,* the defendant failed to appear in court in Connecticut because, while he was in New York upon a requisition from the Governor of Maine to the Governor of New York, the defendant was arrested in New York and taken to Maine where he was charged with burglary and imprisoned. The sureties alleged the defense of impossibility by law to secure the defendant's presence in Connecticut. The United States Supreme Court defined the defenses available to a surety on a bond forfeiture as follows:

"It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another state, it is within the third. * * *" *Id.* at 369-370.

The United States Supreme Court held the sureties liable for the defendant's

nonappearance in Connecticut, stating that:

"If [defendant] had remained in Connecticut he would probably not have been delivered over to the authorities of Maine, and would not, therefore, have been disabled to fulfill the condition of his obligation. * * * The plaintiffs in error are in fault for the departure from Connecticut, and they must take the consequences. * * *

"* * * The result is due, not to the Constitution and law of the United States, but to [the sureties'] own supineness and neglect. Under the circumstances they can have no standing in court to maintain this objection." *Id.* at 372-373.

The facts *sub judice* are similar except that defendant Ohayon left the state and country on his own accord. Appellant's proposed defense is not that the Israeli government seized defendant from the United States, but that appellant is now unable to return the defendant to the United States after defendant voluntarily fled. The facts *sub judice* are even less compelling than the facts in *Taylor*.

The escape of a defendant is the business risk of a bail surety. It is precisely the situation which a surety guarantees against. Appellant insured the risk by securing property of the defendant. The fact that appellant is now unable to deliver the defendant or fully collect on his collateral will not shift the risk to the obligee. We hold, therefore, that it is an insufficient defense in a bond forfeiture proceeding that appellant is unable to produce the defendant due to foreign policy decisions when the defendant voluntarily fled the country prior to his initial court appearance date. Accordingly, the trial court did not err in rendering judgment for the appellee.

*Judgment affirmed.*

CORRIGAN, P.J., and MARKUS, J., concur.